# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

In re:

**COLETTE NMN MAPP,**                                    **CHAPTER 13**

        **DEBTOR.**                                    **CASE NO. 17-30630-KRH**

**BANK OF AMERICA, N.A.,**

        **MOVANT,**

**vs.**

**COLETTE NMN MAPP**
**and CARL M. BATES, TRUSTEE,**

        **RESPONDENTS.**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (REAL PROPERTY LOCATED AT 2019 ROSEWOOD AVENUE, RICHMOND, VA 23220)

**NOTICE**

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

**TO:**     **COLETTE NMN MAPP, DEBTOR**
        **CARL M. BATES, TRUSTEE**

**IF YOU DO NOT WISH THE COURT TO GRANT THE RELIEF SOUGHT IN THE MOTION, OR IF YOU WANT THE COURT TO CONSIDER YOUR VIEWS ON THE MOTION, THEN WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE OF THIS MOTION, YOU MUST FILE A WRITTEN RESPONSE EXPLAINING YOUR POSITION WITH THE COURT AND SERVE A COPY ON THE MOVANT. UNLESS A WRITTEN RESPONSE IS FILED AND SERVED WITHIN THIS FOURTEEN (14) DAY PERIOD, THE COURT MAY DEEM OPPOSITION WAIVED, TREAT THE MOTION AS CONCEDED, AND ISSUE AN ORDER GRANTING THE REQUESTED RELIEF WITHOUT FURTHER NOTICE OR HEARING.**

**IF YOU MAIL YOUR RESPONSE TO THE COURT FOR FILING, YOU MUST MAIL IT EARLY ENOUGH SO THE COURT WILL RECEIVE IT ON OR BEFORE THE EXPIRATION OF THE FOURTEEN (14) DAY PERIOD.**

**THE PRELIMINARY HEARING IS SCHEDULED TO BE HELD ON MARCH 7, 2018 AT 11:00AM IN THE U.S. BANKRUPTCY COURT, 701 EAST BROAD STREET, RICHMOND, VA 23219, COURTROOM 5000.**

Bank of America, N.A. ("Movant") hereby moves this Court, pursuant to 11 U.S.C. §362, for relief from the automatic stay with respect to certain real property of the Debtor having an address of **2019 Rosewood Avenue, Richmond, VA 23220** (the "Property"), for all purposes allowed by the Note (defined below), the Deed of Trust (defined below), and

Nisha R. Patel, Esquire
Counsel for Movant
Samuel I White, P.C.
Bar No. 83302
1804 Staples Mill Road
Suite 200
Richmond, VA 23230
(804) 290-4290
File No. 18477

applicable law, including but not limited to the right to foreclose. In further support of this Motion, Movant respectfully states:

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157 and §1334 and 11 U.S.C. §362(d), and this matter is a core proceeding.

2.      A petition under Chapter 13 of the United States Bankruptcy Code was filed with respect to the Debtor on February 8, 2017.

3.      The Debtor's first Chapter 13 Plan (the "first Plan") was filed on February 8, 2017 and scheduled for confirmation on April 26, 2017. After the Debtor missed her §341 meeting of creditors on March 30, 2017, the Court entered an Order Dismissing Case on April 4, 2017. The Court subsequently granted the Debtor's Motion to Vacate Dismissal and entered an Order reinstating the case on May 15, 2017. That Order also rescheduled the confirmation hearing on the first Plan for July 19, 2017. Both the Movant and the Chapter 13 Trustee filed Objections to Confirmation, and the Debtor filed an Amended Plan (the "second Plan") on July 12, 2017. Again, the Movant and the Chapter 13 Trustee filed Objections to Confirmation of the second Plan. Both Objections were sustained, and the Court entered an Order Denying Confirmation of the second Plan on August 30, 2017. The Debtor filed an Amended Plan (the "third Plan") on September 19, 2017. The Movant filed an Objection to Confirmation, and the Court sustained the Objection and entered an Order Denying Confirmation of the third Plan on November 8, 2017. A hearing to consider confirmation of the Amended Plan filed on January 30, 2018 (the "fourth Plan") is set for March 14, 2018.[1]

4.      The Debtor has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $74,095.00 (the "Note"). A copy of the Note is attached hereto as Exhibit A.

5.      Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Deed of Trust are secured by the Property and the other collateral described in the Deed of Trust. The lien created by the Deed of Trust was perfected by recording of the Deed of Trust in the office of the Clerk of the City of Richmond, Virginia. A copy of the recorded Deed of Trust is attached hereto as Exhibit B.

6.      The legal description of the Property is:

**ALL that certain piece or parcel of land in the City of Richmond, Virginia, situated on the southern line of Rosewood Avenue, between Meadow Street and Rowland Street, together with all the improvements on said parcel and appurtenances**

---

[1] On February 1, 2018, the Court issued an Inquiry/General Checksheet to Counsel for the Debtor, as the fourth Plan was not filed with a budget or properly completed proof of service. No budget or proof of service had been filed as of the date of filing of this Motion, so it is unclear whether the Court will consider confirmation of the fourth Plan on March 14.

thereto belonging, known by house No. 2019 Rosewood Avenue, and bounded as follows, to-wit:

Beginning on the southern line of Rosewood Avenue, at a point distant thereon Two Hundred Thirty-Two and Ninety Nine Hundredths (232.99) Feet westwardly from the western line of Meadow Street, and from said point of beginning running westwardly along and fronting on the southern line of Rosewood Avenue Eighteen and Eighteen Hundredths (18.18) feet, and from said front extending back southwardly, between lines parallel with the western line of Meadow Street (the eastern one of which parallel lines passes in part through a party wall in common between said house No. 2019 and the house No. 2017, adjoining immediately east thereof), One Hundred Ten (110) Feet to the northern line of an alley about Seventeen (17) Feet wide and parallel with the southern line of Rosewood Avenue.

Being the same real estate conveyed to grantor(s) by deed recorded immediately prior hereto.

7.      As of February 13, 2018, the outstanding amount of Obligations less any partial payments or suspense balance is $155,181.11.

8.      The following chart sets forth the number and amount of post-petition payments due pursuant to the terms of the Note that have been missed by the Debtor as of February 13, 2018:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 12 | 03/01/2017 | 02/01/2018 | $523.02 | $6,276.24 |
| | | | **Total:** | **$6,276.24** |

9.      As of February 13, 2018, the total post-petition arrearage/delinquency is $8,076.24, consisting of (i) the foregoing total of missed post-petition payments in the amount of $6,276.24, plus (ii) the following post-petition fees:[2]

| Fee Description | Amount |
|---|---|
| Objections to Plan | $1500.00 |
| Proof of Claim | $300.00 |

10.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $1,031.00 in legal fees and costs.

11.     The estimated value of the Property is $186,000.00.  The basis for such valuation is: Tax Assessment, a copy of which is attached hereto as Exhibit C.

12.     Cause exists for relief from the automatic stay for the following reasons:

---

[2]  The total of missed post-petition payments for this impounded loan include any missed escrow payments.  Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable).  To avoid duplication, post-petition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments.  As part of the next annual RESPA analysis, the Bank will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage.  All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total post-petition arrearage/delinquency is qualified accordingly.

      i.      Movant's interest in the Property is not adequately protected.

      ii.     Post-petition payments have not been made to Movant.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.     Relief from the stay for all purposes allowed by law, the Note, and the Deed of Trust, and applicable law, including but not limited to allowing Movant to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Deed of Trust.

2.     That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

3.     For such other relief as the Court deems proper.

Movant further requests that upon entry of an order granting relief from stay, it be exempted from further compliance with Fed. Rule Bankr. P. 3002.1 in the instant bankruptcy case.

Dated: February 14, 2018

BANK OF AMERICA, N.A.

By: **/s/ Nisha R. Patel**
Eric D. White, Esquire, Bar No. 21346
Michael T. Freeman, Esquire, Bar No. 65460
Brandon R. Jordan, Esquire, Bar No. 72170
Johnie R. Muncy, Esquire, Bar No. 73248
Nisha R. Patel, Esquire, Bar No. 83302
Samuel I. White, P.C.
1804 Staples Mill Road, Suite 200
Richmond, VA 23230
Tel.: (804) 290-4290
Fax: (804) 290-4298
npatel@siwpc.com

## CERTIFICATE OF SERVICE

I certify that on February 14, 2018, the foregoing Notice and Motion were served via CM/ECF on Carl M. Bates, Trustee and Richard C. Devor, Jr., Counsel for Debtor, at the email addresses registered with the Court, and that a true copy was mailed via first class mail, postage prepaid to Colette NMN Mapp, Debtor, P.O. Box 60535, Washington, DC 20011.

**/s/ Nisha R. Patel**
Nisha R. Patel, Esquire
Samuel I. White, P. C.

**Exhibit A**

Commonwealth of Virginia

# NOTE

FHA Case No.

OCTOBER 05, 2006                                          LOAN #
[Date]
2019 ROSEWOOD AVENUE, RICHMOND, VA  23220
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means BANK OF AMERICA N.A.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of SEVENTY FOUR THOUSAND NINETY FIVE AND 00/100

Dollars (U.S. $      74,095.00      ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  SIX AND THREE-EIGHTHS percent (      6.375      %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on DECEMBER 01      ,      2006      . Any principal and interest remaining on the first day of  NOVEMBER      , 2036      , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at BANK OF AMERICA, P.O. BOX 9000, GETZVILLE, NY 14068-9000

or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $      462.26
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

[ ] Graduated Payment Allonge   [ ] Growing Equity Allonge   [ ] Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If

FHA Virginia Fixed Rate Note - 10/95

-BS1R(VA) (9705)
ELECTRONIC LASER FORMS, INC. - (800)327-0545
Page 1 of 2                          Initials:_____

**Represents Redacted Information**



Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of        FOUR        percent (    4.0    %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

| | | |
|---|---|---|
| _Colette Mapp_ (Seal) | PAY TO THE ORDER OF | _____ (Seal) |
| COLETTE MAPP        -Borrower | | -Borrower |
| _____ (Seal) | WITHOUT RECOURSE_____ | _____ (Seal) |
| -Borrower | BANK OF AMERICA, N.A. | -Borrower |
| _____ (Seal) | BY: _Christina M Schmitt_ | _____ (Seal) |
| -Borrower | CHRISTINA M. SCHMITT | -Borrower |
| | ASSISTANT VICE PRESIDENT | |
| _____ (Seal) | | _____ (Seal) |
| -Borrower | | -Borrower |

This is to certify that this is the Note described in and secured by a Deed of Trust dated  OCTOBER 05, 2006 , on the Property located in    RICHMOND    , Virginia.

My Commission Expires:  1-31-08

_Tiffany N Jewel_

Notary Public

**Exhibit B**

*06 - :*

JACKSONVILLE POST CLOSING

Return To: BANK OF AMERICA                    Tax Map Reference #:
          9000 SOUTHSIDE BLVD.
          BLDG 700, FILE RECEIPT DEPT.        RPC/Parcel ID #
          JACKSONVILLE, FL 32256
Prepared By: MARY FREEMAN
          BANK OF AMERICA N.A.
          9000 SOUTHSIDE BLVD - BLDG 600
          JACKSONVILLE, FL  32256

———————————— [Space Above This Line For Recording Data] ————————————

Commonwealth of Virginia   **DEED  OF  TRUST**   FHA Case No.

LOAN #

THIS DEED OF TRUST ("Security Instrument") is made on  OCTOBER 05, 2006
The Grantor is  COLETTE MAPP, A SINGLE PERSON

("Borrower"). The trustee is  PRLAP, INC.
a resident of the Commonwealth of Virginia, whose full residence or business address is  C/O 1400
BEST PLAZA DRIVE  RICHMOND  VA.  23227
and N/A
a resident of the Commonwealth of Virginia, whose full residence or business address is  N/A

trustees (any one of whom may act and who are referred to as "Trustee"). The beneficiary is  BANK OF
AMERICA N.A.
which is organized and existing under the laws of  UNITED STATES OF AMERICA
and whose address is  9000 SOUTHSIDE BLVD - BLDG 600, JACKSONVILLE, FL 32256
                              ("Lender"). Borrower owes Lender the principal sum of
SEVENTY FOUR THOUSAND NINETY FIVE AND 00/100
                    Dollars (U.S. $      74,095.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
NOVEMBER 01, 2036              . This Security Instrument secures to Lender: (a) the
repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7

**FHA Virginia Deed of Trust - 4/96**
**VMP®-4R(VA)** (0402)      **Amended 7/98**
Page 1 of 8           Initials: *C.M.*
VMP Mortgage Solutions (800)521-7291
       FHVA 10/03/06 4:17 PM

Represents Redacted Information

to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in   RICHMOND                                                                                                      , Virginia:
   "LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

which has the address of  2019 ROSEWOOD AVENUE                                                           [Street]
RICHMOND                                   [City], Virginia  23220         [Zip Code] ("Property Address");

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.
   1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

   2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

   Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the

Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**
(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

Initials: _CM_

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn–St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j–3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

> (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

> (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Initials: _CM_

®–4R(VA) (0402)                                          Page 5 of 8

FHVA 10/03/06 4:17 PM

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of   FIVE (5.0)   % of the gross sale price and reasonable attorneys' fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Identification of Note.** The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

22. *Riders to this Security Instrument.* If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider

Initials: *am*

PG 0 9 9 9  OCT 11 '06

NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _Colette Mapp_____ (Seal)
                               COLETTE MAPP              -Borrower

                              _____ (Seal)
                                                        -Borrower

_____ (Seal)  _____ (Seal)
              -Borrower                                 -Borrower

_____ (Seal)  _____ (Seal)
              -Borrower                                 -Borrower

_____ (Seal)  _____ (Seal)
              -Borrower                                 -Borrower

COMMONWEALTH OF VIRGINIA, _Chesterfield_____ County, ss:
The foregoing instrument was acknowledged before me this _10/5/06_
by
      COlETTE MaP

My Commission Expires: _1-31-08_      _Tiffany N Seier_____
                                       Notary Public

# SCHEDULE "A"

ALL that certain piece or parcel of land in the City of Richmond, Virginia, situated on the southern line of Rosewood Avenue, between Meadow Street and Rowland Street, together with all the improvements on said parcel and appurtenances thereto belonging, known by house No. 2019 Rosewood Avenue, and bounded as follows, to-wit:

Beginning on the southern line of Rosewood Avenue, at a point distant thereon Two Hundred Thirty-Two and Ninety Nine Hundredths (232.99) Feet westwardly from the western line of Meadow Street, and from said point of beginning running westwardly along and fronting on the southern line of Rosewood Avenue Eighteen and Eighteen Hundredths (18.18) feet, and from said front extending back southwardly, between lines parallel with the western line of Meadow Street (the eastern one of which parallel lines passes in part through a party wall in common between said house No. 2019 and the house No. 2017, adjoining immediately east thereof), One Hundred Ten (110) Feet to the northern line of an alley about Seventeen (17) Feet wide and parallel with the southern line of Rosewood Avenue.

Being the same real estate conveyed to grantor(s) by deed recorded immediately prior hereto.

INSTRUMENT #060035331
RECORDED IN THE CLERK'S OFFICE OF
CITY OF RICHMOND ON
OCTOBER 11, 2006 AT 02:27PM
BEVILL M. DEAN, CLERK

RECORDED BY: JRO

**Exhibit C**

Print Entire Report    Print This

**Property:** 2019 Rosewood Ave **Parcel ID:** ███████

## Parcel

| | |
|---|---|
| **Street Address:** | 2019 Rosewood Ave Richmond, VA 23220-5820 |
| **Owner:** | MAPP CHANTEL CHRISTINE POA FOR COLETTE MAPP |
| **Mailing Address:** | 2019 ROSEWOOD AVE, RICHMOND, VA 23220 |
| **Subdivision Name :** | NONE |
| **Parent Parcel ID:** | |
| **Assessment Area:** | 230 - Rosewood/Idlewood |
| **Property Class:** | 120 - R Two Story |
| **Zoning District:** | R-6 - Residential (Single Family Attached) |
| **Exemption Code:** | - |

## Current Assessment

| | |
|---|---|
| **Effective Date:** | 01/01/2018 |
| **Land Value:** | $40,000 |
| **Improvement Value:** | $146,000 |
| **Total Value:** | $186,000 |
| **Area Tax:** | $0 |
| **Special Assessment District:** | None |

## Land Description

| | |
|---|---|
| **Parcel Square Feet:** | 1999.8 |
| **Acreage:** | 0.046 |
| **Property Description 1:** | 0018.18X0110.00 0000.000 |
| **State Plane Coords( ?<#>):** | X= 11781767.50 Y= 3723655.251511 |
| **Latitude:** | 37.54514665 , **Longitude:** -77.46913443 |

## Description

| | |
|---|---|
| **Land Type:** | Residential Lot A |
| **Topology:** | |
| **Front Size:** | 18 |
| **Rear Size:** | 110 |
| **Parcel Square Feet:** | 1999.8 |
| **Acreage:** | 0.046 |
| **Property Description 1:** | 0018.18X0110.00 0000.000 |
| **Subdivision Name :** | NONE |
| **State Plane Coords( ?<#>):** | X= 11781767.50 Y= 3723655.251511 |
| **Latitude:** | 37.54514665 , **Longitude:** -77.46913443 |

## Other

| | |
|---|---|
| **Street improvement:** | |
| **Sidewalk:** | |

**Represents Redacted Information**

**Assessments**

| Assessment Year | Land Value | Improvement Value | Total Value | Reason |
|---|---|---|---|---|
| 2018 | $40,000 | $146,000 | $186,000 | Reassessment |
| 2017 | $40,000 | $142,000 | $182,000 | Reassessment |
| 2016 | $40,000 | $134,000 | $174,000 | Reassessment |
| 2015 | $39,000 | $126,000 | $165,000 | Reassessment |
| 2014 | $39,000 | $126,000 | $165,000 | Reassessment |
| 2013 | $39,000 | $126,000 | $165,000 | Reassessment |
| 2012 | $39,000 | $126,000 | $165,000 | Reassessment |
| 2011 | $39,000 | $131,000 | $170,000 | CarryOver |
| 2010 | $39,000 | $131,000 | $170,000 | Reassessment |
| 2009 | $38,800 | $130,900 | $169,700 | Reassessment |
| 2008 | $31,000 | $122,800 | $153,800 | Reassessment |
| 2007 | $31,000 | $121,000 | $152,000 | Reassessment |
| 2006 | $31,000 | $99,800 | $130,800 | Reassessment |
| 2005 | $18,700 | $95,000 | $113,700 | Reassessment |
| 2004 | $17,000 | $86,400 | $103,400 | Reassessment |
| 2003 | $17,000 | $73,000 | $90,000 | Reassessment |
| 2002 | $12,600 | $64,100 | $76,700 | Reassessment |
| 2001 | $10,630 | $53,880 | $64,510 | Reassessment |
| 2000 | $8,500 | $43,100 | $51,600 | Reassessment |
| 1998 | $8,500 | $41,000 | $49,500 | Not Available |

**Transfers**

| Transfer Date | Consideration Amount | Grantor Name | Deed Reference | Verified Market Sale Description |
|---|---|---|---|---|
| 02/02/2017 | $0 | MAPP CHANTEL CHRISTINE | ID2017-2333 | 2 - INVALID SALE-Relation Between Buyer/Seller |
| 10/18/2016 | $0 | MAPP COLETTE | ID2016-20416 | 2 - INVALID SALE-Relation Between Buyer/Seller |
| 10/11/2006 | $60,000 | MAPP ETHEL L EST | ID2006-35330 | 2 - INVALID SALE-Relation Between Buyer/Seller |
| 04/26/2004 | $0 | MAPP ETHEL L | ID2004-374 | |
| 04/28/1964 | $10,500 | Not Available | 00000-0000 | |

## Planning

**Master Plan Future Land Use:** SF-MD
**Zoning District:** R-6 - Residential (Single Family Attached)
**Planning District:** Near West
**Traffic Zone:** 1131
**City Neighborhood Code:** BYDP
**City Neighborhood Name:** Byrd Park
**Civic Code:** 0130
**Civic Association Name:** Byrd Park Civic League
**Subdivision Name:** NONE
**City Old and Historic District:**
**National historic District:**
**Neighborhoods in Bloom:**
**Redevelopment Conservation Area:** Randolph

## Economic Development

**Care Area:** -
**Enterprise Zone:**

## Environment

**100 YEAR Flood Plain Flag:** Data Not Available. Contact the Water Resources Division at 646-7586.
**500 YEAR Flood Plain Flag:** Data Not Available. Contact the Water Resources Division at 646-7586.
**Resource Protection Flag:** Data Not Available. Contact the Water Resources Division at 646-7586.
**Wetland Flag:** Data Not Available. Contact the Water Resources Division at 646-7586.

## Census

| Census Year | Block | Block Group | Tract |
|---|---|---|---|
| 2000 | 1019 | 0414001 | 041400 |
| 1990 | 124 | 0414001 | 041400 |

## Schools

**Elementary School:** Cary
**Middle School:** Binford
**High School:** Jefferson

## Public Safety

**Police Precinct:** 3
**Police Sector:** 313
**Fire District:** 12
**Dispatch Zone:** 039B

## Public Works Schedules

**Street Sweep:** TBD
**Leaf Collection:** TBD
**Refuse Collection:** Wednesday
**Bulk Collection:**

## Government Districts

**Council District:** 5
**Voter Precinct:** 504
**State House District:** 69
**State Senate District:** 9
**Congressional District:** 4

## Extension 1 Details

| | |
|---|---|
| **Extension Name:** | R01 - Residential record #01 |
| **Year Built:** | 1924 |
| **Stories:** | 2 |
| **Units:** | 0 |
| **Number Of Rooms:** | 7 |
| **Number Of Bed Rooms:** | 3 |
| **Number Of Full Baths:** | 1 |
| **Number Of Half Baths:** | 0 |
| **Condition:** | normal for age |
| **Foundation Type:** | Full Bsmt |
| **1st Predominant Exterior:** | Brick |
| **2nd Predominant Exterior:** | N/A |
| **Roof Style:** | Gable |
| **Roof Material:** | Metal |
| **Interior Wall:** | Plaster |
| **Floor Finish:** | Hardwood-std oak |
| **Heating Type:** | Heat pump |
| **Central Air:** | Y |
| **Basement Garage Car #:** | 0 |
| **Fireplace:** | Y |
| **Building Description (Out Building and Yard Items) :** | |

## Extension 1 Dimensions

| | |
|---|---|
| **Finished Living Area:** | 1216 Sqft |
| **Attic:** | 0 Sqft |
| **Finished Attic:** | 0 Sqft |
| **Basement:** | 608 Sqft |
| **Finished Basement:** | 0 Sqft |
| **Attached Garage:** | 0 Sqft |
| **Detached Garage:** | 0 Sqft |
| **Attached Carport:** | 0 Sqft |
| **Enclosed Porch:** | 50 Sqft |
| **Open Porch:** | 158 Sqft |
| **Deck:** | 0 Sqft |

<#>

**Property Images**

Name:W0000892005 Desc:R01



Click here for Larger Image

Case 17-30630-KRH Doc 86 Filed 02/14/18 Entered 02/14/18 14:43:26 Desc Main
Document Page 21 of 21

**Sketch Images**

Name:W0000892005 Desc:R01

